Judge Benjamin H. Settle

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRENT LUYSTER,<br><br>Defendant. | NO. CR17-5314BHS<br><br>GOVENRMENT'S SENTENCING MEMORANDUM |

## I.  Introduction

The defendant, Brent Luyster, lured his ex-girlfriend, E.C., to his residence in Longview, Washington. Once she was there, Luyster, without warning, beat E.C., dragged her to his bedroom, and in front of his current girlfriend and his two young sons, pistol whipped E.C. in the head. E.C. was able to escape and call 911. When Cowlitz County Sheriff deputies arrived at Luyster's residence, they heard Luyster in the woods behind the house. In response to the deputies' presence, Luyster fired multiple gun shots from a semi-automatic rifle, leading the responding deputies to believe they were under attack. The deputies were able to talk Luyster out of the woods. When they arrested and searched Luyster they found two loaded ammunition clips on him. The deputies then searched the wooded area where Luyster had been and found three loaded firearms and multiple large capacity ammunition clips. The deputies obtained a search warrant and

GOVERNMENT'S SENTENCING MEMORADUM - 1
CR17-5314BHS/LUYSTER

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

searched Luyster's residence. In Luyster's bedroom, the deputies recovered an additional six other firearms from a safe.

Luyster was charged by superseding indictment with three firearms counts:

Count 1: Felon in possession of a firearm;

Count 2: Felon in possession of ammunition; and,

Count 3: Felon in possession of a firearm.

Each count was in violation of Title 18, United States Code, Section 922(g)(1).

The events on May 16, 2017, culminated a long unbroken history of gun related violence by the defendant, Brent Luyster. Despite being sentenced multiple times for violent felonies, and being advised that he was prohibited from possessing a firearm, Luyster ignored the law and repeatedly acquired firearms and engaged in violent firearm conduct. Even while Luyster was on release pending trial for his assault of E.C., Luyster armed himself with a .45 caliber handgun, shot and killed three of his friends, and seriously wounded a fourth person. Luyser's actions in this case and his history of using firearms to injure and terrorize others supports the government's sentencing recommendation of 210 months of imprisonment.

## II. Relevant Facts

**a. Luyster's assault of E.C. on May 16, 2017**

In approximately 2008, Brent Luyster and E.C. became involved in a relationship. They were together for several years, off and on, before the relationship ended due to Luyster's infidelity and ongoing domestic violence. During their relationship E.C. and Luyster had a son, S.L. about the time Luyster went back to prison.

When Luyster was released from prison he began a relationship with Andrea Sibley. Even though Luyster was involved with Sibley he continued to occasionally see E.C. and his son. E.C. and Luyster did not have a formal parenting plan and Luyster would occasionally take S.L. and keep him for long periods of time and not let E.C. have access to him.

GOVERNMENT'S SENTENCING MEMORADUM - 2
CR17-5314BHS/LUYSTER

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

On May 16, 2016, E.C. was at her parent's house in Vancouver, Washington. Luyster unexpectedly arrived and wanted E.C. to go with him and Sibley to see their new house. E.C. was reluctant because Luyster seemed intoxicated and she did not trust him. However, she relented when her young son, whom she had with Luyster and was in Luyster's custody, asked her to come with them.

While at E.C.'s parents house, Luyster, who as armed with a handgun, told E.C.'s parents that he was going away for a long time and that he might need them to take care of his and E.C.'s child. Luyster also promised them that he would never hurt E.C., a comment that they found odd. When they asked Luyster why he was going away, Luyster simply said, watch the news.

When E.C. was in the car, Sibley, who was driving, told her to watch herself because Luyster was in a mood. They went to Sibley and E.C.'s house located in Longview, Washington.[1] While at the house, Luyster showed E.C. a firearm that he had bought for their five year old son. Luyster also had E.C. follow him to his bedroom and opened a safe which held a number of firearms.

Initially, everything was calm and E.C. fell asleep on the couch. She woke up to Luyster punching her in the face. He then grabbed her by the hair and dragged her to his bedroom, where he hit E.C. in the head with a handgun.

E.C. was able to get away from Luyster and ran out of the house barefoot. As she ran away, she looked back and saw Luyster come to the door way with a rifle and shoot in her direction.

E.C. who had her cell phone called 911 and in a frantic state reported that she thought she was about to be killed, that she had a bad head injury and was bleeding. Eventually, E.C. disclosed that Luyster had hit her in the head with a firearm. Because she was not familiar with the area, she could not tell the 911 operator her location. E.C.

---

[1] Sibley had rented this house in her name and had her father co-sign for her. She did not tell the landlord or her father that Luyster was going to live there with her.

GOVERNMENT'S SENTENCING MEMORADUM - 3
CR17-5314BHS/LUYSTER

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

ran to the neighbor's house asking for help. By the time the neighbors responded to the door, E.C. had runaway. The neighbors went outside to investigate. They heard a series of gunshots. As they walked toward Sibley's residence, they saw Sibley walking between their houses. Sibley came over and said she was looking for a drunk friend who was causing trouble. When the neighbor asked about the gunshot, Sibley said it was them shooting at a coyote.

Meanwhile E.C. had run to another nearby house and the homeowner called 911. The Cowlitz County Sheriff's Office responded and found E.C., bleeding, crying, and barefoot. She was disoriented and had a hard time focusing but expressed concern about her five year old son.

The deputies were able to figure out that the assault took place at Luyster and Sibley's residence at 123 Solo View Drive, Longview, Washington. As the deputies walked up toward the house they heard noise coming from the wooded area behind the house. It sounded to them like someone walking in the woods. Within minutes of arriving, gunshots rang out. The deputies fearful that the person in the woods (later identified as Luyster) was shooting at them. The deputies took cover believing they were under attack. The deputies described hearing ten to twelve shots fired in rapid succession.

Sergeant Dave Handy called out Luyster's name. Luyster responded that he was not shooting at them. Eventually, Luyster walked out of the woods where he was promptly arrested.

The deputies found two loaded ammunition clips for a semiautomatic rifle on Luyster. Each clip was loaded with 30 rounds of 5.56 ammunition. The deputies then searched the wooded area and found three other firearms:
- Bushmaster, model Carbon 15, .223 caliber rifle,
- one Glock, model 27, .40 caliber handgun,
- one Keltec pump action model, KSG, 12 gauge shotgun, and
- six loaded ammunition clips similar to the two found on Luyster.

GOVERNMENT'S SENTENCING MEMORADUM - 4
CR17-5314BHS/LUYSTER

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The deputies obtained a search warrant for Luyster's residence. When the deputies searched the residence they saw a trail of blood leading from the bedroom to the front door. In the bedroom they found a gun safe that contained the following firearms:

- Anderson AM 15 .223
- Remington model 700 .308
- Smith and Wesson MP15, .223
- Ruger model 10/22 .22 cal
- Keystone Sporting Cricket .22 cal
- Kimber model micro .380 pistol

Also inside the safe were over ten loaded ammunition clip, similar to the ones found on Luyster, and hundreds of rounds of ammunition to various caliber firearms.

Special Agent Leland Stice of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) began to investigate the origins of the firearms. His investigation revealed that all of the firearms recovered at the scene had been purchased by Sibley between March 2015 through March 2016. In addition to the nine firearms listed above, Special Agent Stice learned that Sibley had also purchased a Kimber model micro .45 caliber handgun. The whereabouts of this gun remain unknown.[2]

Following his arrest on May 16, 2017, Luyster was charged in Cowlitz County Superior Court with Assault in the Second Degree, Reckless Endangerment, and Unlawful Possession of a Firearm. He was held in custody until approximately, June 7, 2016, when the judge reduced Luyster's bail from $150,000 to $90,000.

On July 15, 2016, Luyster was at his acquaintances residence in Woodland, Washington. While there he shot four of his friends: Zachary Thompson, Joseph Lamar, Janell Knight, and Brianne Leigh. Thompson, Lamar, and Knight died. Fortunately Leigh survived and was able to drive herself to a nearby store where she reported the

---

[2] This is the same caliber of a firearm that Luyster used to murder the three Vancouver victims

GOVERNMENT'S SENTENCING MEMORADUM - 5
CR17-5314BHS/LUYSTER

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

shootings. According to the investigation, Luyster used a .45 caliber handgun to commit the murders. The murder weapon was never recovered.

On December 15, 2017, Luyster was convicted and sentenced to three life terms without the possibility of parole.

Following his state murder convictions, Luyster was brought to federal court to face the instant charges.

On November 9, 2018, a jury convicted Luyster of Counts 1 and 2 of the superseding indictment.

### b. Luyster's conduct during trial

On November 8, 2018, during the trial, the United States Marshal Service received a tip from a female who disclosed that another inmate at the Federal Detention Center had told her that Luyster had stated that something big was going to happen in court. The U.S. Marshals interviewed an inmate at the FDC who stated that Luyster told him he wanted to stay in federal system because he liked it better than the state. Luyster claimed that he was planning on killing the judge or an officer at the Bureau of Prisons. Luyster told the inmate that he had been smuggling things between court and the FDC including a large paper clip.

The FDC searched Luyster's cell and found two homemade weapons – one a homemade knife and another weapon which looked like a screwdriver. See Attachment A. The knife had been made by cutting out the frame of Luyster's cell bed.

### III. Sentencing Guidelines Calculation

The government has reviewed the presentence report calculated by United States Probation and agrees with the calculation of Luyster's advisory sentencing guidelines.

### a. Base offense level

The government believes that Probation correctly calculated Luyster's base offense level as 20 under USSG § 2K2.1(a)(4)(B)(I) because Luyster was in possession of a semi-automatic firearm capable of accepting a large capacity magazine. Application

GOVERNMENT'S SENTENCING MEMORADUM - 6
CR17-5314BHS/LUYSTER

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Note 2 explains that a large capacity magazine is one that could accept more than 15 rounds.

Here, Luyster was found guilty of possessing a Bushmaster, model Carbon 15, .223 caliber rifle which qualifies as a semi-automatic assault rifle. This firearm had a magazine attached it which held 16 rounds. Also, Luyster had two high capacity magazines both loaded with 30 rounds of ammunition. These magazines were compatible with being used with the Bushmaster.

**b. Number of Firearms**

The government believes that Probation correctly applied a four level increase under USSG § 2K21.(b)(1)(B) for possession of nine firearms. These include the three firearms found on the hillside and the six firearms found in the safe in his house.

Although Luyster was acquitted of Count 3 which was for the six firearms found in the safe in the house, Probation properly include them in the calculation of the number of firearms possessed.

The Supreme Court has held that a sentencing judge can consider conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence, for sentencing purposes. *United States v. Watts,* 519 U.S. 148, 157 (1997); See also, *United States v. Mercado,* 474 F.3d 654, 657 (9th Cir. 2007).

Here, there is no dispute that the firearms were found in Luyster's residence in a safe in his bedroom. Brianne Leigh was prepared to testify that she and her husband, Zachary Taylor, had been to Luyster's residence in Longview on more than one occasion. During those visits, Luyster bragged about how Sibley was buying him firearms. Luyster showed her and Taylor the safe which was full of guns. On at least one occasion she saw Luyster remove a firearm from the safe.

Additionally, Andrea Sibley admitted, in her plea agreement to purchasing five of the firearms recovered from the safe. See Dkt. No. 30, Sibley Plea Agreement, page 5, ¶¶ (c) through (f). She further admitted that the firearms were stored at their residence and that she made the firearms available for Luyster's use.

GOVERNMENT'S SENTENCING MEMORADUM - 7
CR17-5314BHS/LUYSTER

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Based on the facts adduced at trial, Brianne Leigh's statements proffered to the Court, and Sibley's plea agreement, the government has proven by a preponderance of evidence that Luyster possessed the firearms in the safe.

**c. Use of a firearm in connection with another felony**

Under USSB § 2K2.1(b)(6)(B), Probation properly added a four level enhancement for Luyster's use of a firearm in connection with another felony, in this case, the assault of E.C.

The evidence at trial established that Luyster took a handgun and pistol whipped E.C. in the head causing an open wound which required medical attention. This enhancement is appropriate.

**d. Obstruction of Justice**

The government also agrees with Probation that Luyster's attempted escape qualifies as obstruction under USSG § 3C1.1. That section states in relevant part:

> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

Here, the evidence establishes that Luyster intended to disrupt the proceedings by assaulting the Court or another Bureau of Prison's employee. In order to carry out his plan, Luyster made two weapons which were found in his cell. This conduct fits within the type of conduct aimed at disrupting the prosecution of his case.

Consequently, Luyster's guideline range, based on a criminal history category of VI, is 168 to 210 months.

Because Luyster was convicted of two counts of § 922(g)(1), each which carries ten year statutory maximum. Since the guideline range is greater than the statutory maximum for one count, the Court can run the sentences consecutive to each other to reach the guideline range. See USSG § 5G1.2.

GOVERNMENT'S SENTENCING MEMORADUM - 8
CR17-5314BHS/LUYSTER

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## IV. Recommendation

Based on Luyster's possession and use of the firearm to attempt to kill or seriously injure E.C., his manipulation of Sibley to acquire firearms, thereby circumventing the prophylactic regulations to prevent felons from possessing firearms, his long violent criminal history, and his total disdain for the law, a sentence of 210 months of imprisonment consecutive to any other state sentence is warranted.

**a. Nature of the Offense.**

As noted above, and proved at trial, Luyster lured E.C. to his residence, a rural area unfamiliar to E.C. By taking her to his residence, he placed her in an extremely vulnerable situation. Luyster then violently assaulted her with a firearm by pistol whipping E.C. in the head and when she fled, he fired shots at her. The evidence supports an inference that he intended to murder her. Once it was clear that E.C. had successfully fled, Luyster gathered up a cache of firearms and ammunition and fled into the woods behind his house. When the deputies showed up, Luyster began firing a semi-automatic assault rifle. It is unclear why he fired the shots or if he was aiming at them. Nonetheless, he created a very dangerous and scary situation for the deputies.

Prior to the incident, Luyster had manipulated Andrea Sibley to purchase numerous firearms for him. Luyster knew he could not acquire the firearms himself because of his status as a felon so he convinced Sibley to buy them for him. Over the course of approximately one year, Luyster obtained ten firearms. One of which remains outstanding.

These facts are aggravating and set this offense apart from other felon in possession offenses.

**b. History and Characteristics**

Luyster is a white supremacist and has held these beliefs for a long time. His criminal history includes hate crimes against minorities. For example in 2001, Luyster attacked an African-American who had come onto his property looking for his dogs. Luyster told the victim "N_gger this ain't your dog. Get off our property." Luyster and

GOVERNMENT'S SENTENCING MEMORADUM - 9
CR17-5314BHS/LUYSTER

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

his associates then assaulted the victim, hitting him with 2 by 4 boards. See PSR ¶ 46. Four years later, Luyster was convicted of Malicious Harassment when he and another associate attacked an African-American, shooting him in the leg. PSR ¶ 50. In 2014, Luyster was convicted of riot with a deadly weapon when he and three of his associates entered a bar and began hassling an African-American who was sitting with a Caucasian woman. Luyster yelled out upon seeing them "Look at this white girl over here with a stupid n_gger." When another African American sought to intervene, Luyster obtained a firearm from his brother and threatened to shoot the victim. PSR ¶ 55.

In addition to being a violent bigot, Luyster has shown a fascination with firearms. Many of prior felonies involve the theft, possession, or use of firearms. He has shown that he has no hesitation to use a firearm to hurt and even kill others. While on pretrial release from Cowlitz County, Luyster armed himself with a handgun and murdered three victims and attempted to kill Brianne Leigh.

Additionally, Luyster is a domestic abuser. All of the women he has been involved with have suffered domestic violence. E.C. told the FBI that even after she broke up with Luyster, he stalked her and would force himself into her life. He frequently took her son from her without her permission. On one occasion several months before the instant offense, Luyster pointed a gun at E.C.'s head and threatened to kill her.

Also troubling are Luyster's actions in making weapons while housed at the FDC. While there, Luyster made two deadly weapons. Based on available evidence he intended to use these against officials.

His history and characteristics demonstrate that Luyster is a predator who is not safe to be free in society.

**c. Need to Protect Society.**

As demonstrated in this case and through his history, Luyster is a danger to society who is incapable of reforming. Thus, the longest possible sentence is needed to protect society.

GOVERNMENT'S SENTENCING MEMORADUM - 10
CR17-5314BHS/LUYSTER

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V. Conclusion

Although Luyster is facing a life sentence for the murders. He must be punished for his actions herein. He blatantly acquired firearms in violation of the law and used those firearms to nearly murder E.C. While in custody at the FDC, he then made two deadly weapons and openly discussed attempting to attack Court personnel or BOP officials. The government believes a sentence of 210 months is warranted based on the factors above and that it should run consecutive.

The government persisted with this prosecution even after Luyster was convicted of murder and sentenced to life because Luyster still needed to be held accountable for his actions herein. Also, it serves as insurance should his murder convictions ever be overturned.

DATED this 20th day of February, 2019.

    Respectfully submitted,
    BRIAN T. MORAN
    United States Attorney

    *s/ Bruce F. Miyake*
    BRUCE F. MIYAKE
    Assistant United States Attorney
    United States Attorney's Office
    700 Stewart Street, Suite 5220
    Seattle, Washington 98101-1271
    Phone: (206) 553-2077
    E-mail: Bruce.Miyake@usdoj.gov

GOVERNMENT'S SENTENCING MEMORADUM - 11
CR17-5314BHS/LUYSTER

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant.

*s/ Melissa Frank*
MELISSA FRANK
Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-4215
E-mail: melissa.frank@usdoj.gov

GOVERNMENT'S SENTENCING MEMORADUM - 12
CR17-5314BHS/LUYSTER

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# ATTACHMENT A





GOVERNMENT'S SENTENCING MEMORADUM - 13
CR17-5314BHS/LUYSTER

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970